UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JACK A. F., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:25-CV-128-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| COMMISSIONER OF SOCIAL | ) | **ORDER** |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Jack A. F. filed this action seeking review of the decision by Defendant Commissioner of Social Security to deny his applications for Child's Supplemental Security Income Benefits and Disability Insurance Benefits. [R. 1]. Claimant submitted his Fact and Law Summary on August 25, 2025, [R. 12], and the Commissioner submitted their Fact and Law Summary on November 20, 2025, [R. 17], to which Plaintiff replied on December 9, 2025. [R. 19]. Magistrate Judge Edwards issued her Findings of Fact, Conclusions of Law, and Recommendation ("Recommendation") on December 18, 2025, recommending that the Court affirm the final decision of the Commissioner. [R. 20]. Plaintiff timely filed Objections to the Report and Recommendation. [R. 21]. For the reasons that follow, the Court will adopt the Recommendation, overrule Plaintiff's objections, and affirm the final decision of the Commissioner.

## I.    BACKGROUND

Magistrate Judge Edwards's Recommendation ably sets out the full factual background of this case. [R. 20]. On August 9, 2022, Jack A. F. ("Claimant") filed applications for Child's Disability Insurance Benefits and Child's Supplemental Security Benefits under Titles II and XVI. [R. 6, pp. 14, 201–02, 203–210 (Transcript, hereinafter, "Tr.")]. Claimant alleged disability since

- 1 -

his birth on August 25, 2004, based on having the CACNA-1A gene.[1] *Id.* at 226. The Social Security Administration ("SSA") initially denied his claims on April 6, 2023, and denied his request for reconsideration on June 23, 2023. *Id.* at 66, 75, 84, 105. On June 30, 2023, Claimant filed a written request for a hearing before an Administrative Law Judge ("ALJ"). *Id.* at 130. ALJ Dennis Pickett conducted a telephonic hearing on January 8, 2024. *Id.* at 43–65. Then, on March 4, 2024, ALJ Pickett issued an unfavorable decision. *Id.* at 11–42.

Therein, ALJ Pickett first acknowledged that because Claimant was under the age of eighteen when he filed his application but attained age eighteen before the date of the decision, two issues must be resolved: (1) whether Claimant was disabled under § 1614(a)(3)(C) of the Social Security Act for the period before age eighteen; and (2) whether the Claimant is disabled under § 1614(a)(3)(A) of the Social Security Act beginning at age 18. *Id.* at 14–15. In resolving the first issue, ALJ Pickett applied 20 C.F.R. § 416.924(a)'s three-step sequential evaluation process for determining whether Claimant was disabled before he turned eighteen. At step one, ALJ Pickett determined that Claimant had not engaged in substantial gainful activity since his alleged onset date of August 25, 2004. *Id.* at 19. At step two, he determined that Claimant had the severe impairments of epilepsy and anxiety disorder. *Id.* At step three, ALJ Pickett found Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* at 20. Then, because Claimant's impairments did not meet or medically equal a listed impairment, ALJ Pickett

---

[1] The CACNA1A gene "plays a vital role in the communication between neurons and the brain." Sarah McKeown Ruggiero, MS, LCGC, The Science of CACNA1A, CACNA1A Foundation, https://www.cacna1a.org/what-is-cacna1a (last visited Mar. 23, 2026). "Mutations in CACNA1A cause a number of neurological phenotypes (observable characteristics or traits) . . . . [R]esearch has shown that most [Loss of Function] variants cause Episodic Ataxia Type 2 and [Gain of Function] variants result in Hemiplegic Migraines. Studies have indicated clinical overlap, with features of both disorders being observed in patients. Congenital ataxia, cerebellar atrophy, epilepsy and intellectual disability are also seen in both Gain of Function and Loss of Function variants." *Id.*

addressed whether Claimant had an impairment or impairments that functionally equaled the severity of the listings, and found that Claimant did not. *Id.* at 21–28. Taken together, ALJ Pickett concluded that Claimant was not disabled, as defined by the Social Security Act, before he turned eighteen. *Id.* at 28.

In resolving the second issue, ALJ Pickett applied 20 C.F.R. § 416.920's five-step sequential evaluation process for determining whether Claimant was disabled after he turned eighteen. At step one, ALJ Pickett did not reevaluate whether Claimant had engaged in substantial gainful activity since his alleged onset date of August 25, 2004. *See id.* At step two, he found Claimant had not developed any new impairment or impairments after turning eighteen that were not already previously found to be severe. *Id.* At step three, ALJ Pickett determined that since attaining age eighteen, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *Id.* ALJ Pickett then determined that since Claimant turned eighteen, he has had the residual functional capacity to perform a full range of work at all exertional levels, but with the following non-exertional limits:

> no climbing of ladders, ropes, or scaffolds; no exposure to unprotected heights or dangerous machinery; able to understand, remember, and carry out simple instructions and procedures; respond appropriately to supervisors and coworkers in usual work situations; deal with changes in a routine work setting that does not require work with the public; and can have occasional interaction with coworkers and supervisors.

*Id.* at 30–36. At step four, ALJ Pickett reiterated that Claimant has no past relevant work. *Id.* at 36. Finally, at step five, after considering Claimant's age, education, work experience, and residual functional capacity, ALJ Pickett found there are jobs that exist in significant numbers in the national economy that Claimant can perform. *Id.* Taken together, ALJ Pickett concluded that

Claimant was not disabled, as defined in the Social Security Act, from August 9, 2022—the date his applications were filed—through the date of the decision, March 4, 2024. *Id.* at 37.

On April 10, 2024, Claimant administratively appealed ALJ Pickett's denial, *id.* at 198–200, but on January 22, 2025, the Appeals Council declined to review ALJ Pickett's decision. *Id.* at 1–6. At that point, ALJ Pickett's decision became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court on March 3, 2025. [R. 1].

## II.    LEGAL STANDARD

When a party timely objects, the Court reviews de novo only those portions of a Report and Recommendation to which an objection is made. 28 U.S.C. § 636(b)(1)(C). The Court may adopt without review any portion of the report to which no objection is made. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). On review, the Court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Accordingly, the Court will review de novo the portions of Magistrate Judge Edwards's Recommendation to which Claimant properly objects.

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Colvin v. Barnhart*, 475 F.3d 727, 729–30 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must "affirm the Commissioner's conclusions unless the Commissioner failed to apply the correct legal standard or

made findings of fact that are unsupported by substantial evidence." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

To determine disability for a claimant under the age of eighteen, the ALJ conducts a three-step analysis: "(1) whether the child is engaged in 'substantial gainful activity'; (2) if the child's impairment is 'severe'; and (3) if the impairment 'meet[s], medically equal[s], or functionally equal[s]' any in the Listing of Impairments." *Foltz obo R.B.K.F. v. Commissioner of Social Security*, No. 23-3362, 2023 WL 7391701, at*3 (6th Cir. 2023) (quoting 20 C.F.R. § 416.924(a)–(d)). To functionally equal a listing, a child must have marked limitations in two specified domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a)-(b). The ALJ must consider six domains in deciding whether a claimant's impairment(s) functionally equal the severity of a listing: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Id.* § 416.926a(b)(1). A "marked" limitation results if the child's impairment(s) "interferes seriously with [his] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i).

To determine disability for a claimant over the age of eighteen, the ALJ conducts a five-step analysis:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.
2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her physical or mental ability to do basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.
3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

- 5 -

4. Does the claimant have the Residual Functional Capacity (hereinafter, "RFC") to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Jordan*, 548 F.3d at 423; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

## III.    ANALYSIS

As outlined in greater detail below, *see infra*, Claimant makes two objections to Judge Edwards's Recommendations, challenging the ALJ's decisions on both the child disability determination and the adult disability determination.

### A.  Child Disability Determination

Claimant articulates three objections regarding the ALJ's decision to deny childhood disability benefits. First, Claimant argues ALJ Pickett failed to adequately explain why he did not find Claimant had a marked limitation in the childhood domain of interacting and relating with others, particularly with regard to the medical opinion of Dr. Scott, a Licensed Psychological Practitioner who performed a psychological evaluation of Claimant at the request of the Social Security Administration. [R. 6, pp. 1205–13 (Tr.); R. 21, p. 3]. Specifically, Claimant points to the ALJ's alleged complete failure to consider Dr. Scott's medical opinion that Claimant's capacity to respond appropriately to supervisors, co-workers, and the general public in a work setting was affected to a marked degree. [R. 21, pp. 2–3]; *see* [R. 6, p. 1211 (Tr.)]. Second, Claimant argues

ALJ Pickett's evaluation of the questionnaire completed by Ms. Dye, Claimant's teacher, and of the neuropsychological evaluation completed by Dr. Stilp, a pediatric neuropsychologist who evaluated Claimant in June, July, and August of 2022 and did not formally diagnose Claimant with any anxiety disorder, constituted impermissible "cherry-picking" and "paint[ed] the evidence in a light that is not reflective of their true import." [R. 21, p. 3; R. 6, pp. 928–29 (Tr.)]. Third, Claimant contends the ALJ's child disability determination was not supported by substantial evidence, pointing mainly to the alleged failure to consider Dr. Scott's finding that Claimant was markedly limited in his "capacity to respond appropriately to supervisors, co-workers, and the general public in a work setting." [R. 21, p. 2; R. 6, p. 1211 (Tr.)]. Accordingly, the Court will address Claimant's substantial evidence argument as part of its discussion of Dr. Scott's evaluation.

As outlined above, *see supra* Section II, the ALJ considers as part of their disability determination whether a claimant's impairment(s) functionally equal the severity of a listed impairment, which itself requires assessing the degree to which a claimant is limited across six domains, one of which is the ability to interact and relate with others. *See* 20 C.F.R. §§ 416.924(a)–(d), 416.926a(b)(1), 416.926a(e)(2)(i). The ability to interact and relate with others refers to "how well [the claimant] initiate[s] and sustain[s] emotional connections with others, develop[s] and use[s] the language of [his] community, cooperate[s] with others, compl[ies] with rules, respond[s] to criticism, and respect[s] and take[s] care of the possessions of others." *Id.* § 416.926a(i). For adolescents (aged 12-18), this includes:

> Be[ing] able to initiate and develop friendships with children who are your age and to relate appropriately to other children and adults, both individually and in groups. You should begin to be able to solve conflicts between yourself and peers or family members or adults outside of your family. You should recognize that there are different social rules for you and your friends and for acquaintances or adults. You should be able to intelligibly express your feelings, ask for assistance in getting your needs met, seek information, describe events, and tell stories, in all kinds of environments (e.g., home, classroom, sports, extra-curricular activities, or part-time

job), and with all types of people (e.g., parents, siblings, friends, classmates, teachers, employers, and strangers).

*Id.* § 416.926a(i)(2)(v). Examples of limited functioning in this domain include lacking close friends or any friends of the same age; avoiding or withdrawing from familiar people or being "overly anxious or fearful of meeting new people or trying new experiences"; having difficulty playing sports or games with rules; and having difficulty communicating with others. *Id.* § 416.926a(i)(3).

### 1. Dr. Scott

The Court first addresses Claimant's arguments that (1) ALJ Pickett's utter failure to consider Dr. Scott's evaluation renders his decision erroneous and fails to build a logical bridge to his findings and (2) ALJ Pickett's decision was not supported by substantial evidence. Dr. Scott assessed Claimant on February 15, 2023—slightly less than six months after Claimant turned eighteen on August 25, 2022. [R. 6, pp. 203, 1205, (Tr.)]. In assessing Claimant's "functional capacities," Dr. Scott found Claimant's "capacity to respond appropriately to supervisors, co-workers, and general public in a work setting" was affected to a "marked degree." *Id.* at 1211. When speaking with Dr. Scott, Claimant reported experiencing "anxiety in crowds and when talking to new people" and "feel[ing] uncomfortable speaking to anyone in authority." *Id.* at 1206. During Claimant's interaction with Dr. Scott, Claimant also displayed "normal" levels of eye contact, "remained pleasant even as tasks increased in difficulty," and "smiled often and appeared to become more at ease as the examination progressed." *Id.* at 1207.

In his decision, ALJ Pickett provided the following analysis regarding Claimant's ability to interact and relate with others, which fails to mention Dr. Scott's opinion at Exhibit 9F [R. 6, pp. 1205–13 (Tr.)]:

Prior to attaining the age of 18, the claimant had a less than a marked limitation in interacting and relating with others. During an evaluation in 2016, the claimant's mother denied behavioral issues in school but indicated the claimant demonstrated a tendency toward social anxiety and withdrawal in groups (Exhibit 3F at 326). An IEP in 2020 indicates the claimant's communication was commensurate with similar aged peers (Exhibit 2F at 1). During [Claimant's] neuropsychological evaluation [with Dr. Stilp] in [June, July, and early August of] 2022, the claimant's mother reported significant concerns with anxiety and social problems while the claimant reported concerns with personal adjustments and difficulties with interpersonal relationships and self-esteem (Exhibit 4F at 2). The dean of the school noted only mild concerns with anxiety (Exhibit 4F at 2). The claimant made appropriate eye contact and participated in reciprocal social interactions with the examiner (Exhibit 4F at 9). Rapport was readily established and maintained (Exhibit 4F at 9).

The claimant testified he spends time with friends and will occasionally get anxious even around others he is familiar with (Hearing Testimony). His mother noted he got along with others (Exhibit 6E at 5) but later reported he had social anxiety (Exhibit 11E at 1). In 2023, several months after turning 18, one of the claimant's teacher[s] noted some serious problems making and keeping friends and maintaining conversation but slight to obvious problems in other areas in this domain (Exhibit 12E at 4). However, at the end of 2022, the claimant's math teacher noted slight problems in this area due to some deficits with articulation and communication skills (Exhibit 3E at 4). Additionally, the claimant's English teacher noted no limitation in this area of functioning (Exhibit 4E at 4).

Accordingly, the evidence is consistent with some social anxiety but the claimant is able to make friends, spends time with his friends, established rapport with examiners, and could communicate his needs. This is consistent with a less than marked limitation in this area of functioning.

*Id.* at 25–26. ALJ Pickett did not expressly consider Dr. Scott's opinion in his specific analysis of Claimant's ability to interact and relate with others prior to age eighteen, *see id.* at 25–26, Claimant alleges error. *See* [R. 21, p. 3].

However, ALJ Pickett *did* consider Dr. Scott's opinion elsewhere in making his childhood disability determination. In fact, ALJ Pickett expressly stated the following:

As for the medical opinion(s) and prior administrative medical finding(s), we will not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from your medical sources. We fully considered the medical opinions and prior administrative medical findings in your case as follows:

The undersigned considered the numerous reports from the claimant's mother, teachers, and other educational and vocational staff discussed in the domains above (Exhibits 3E, 4E, 6E, 10E, 11E, 12E, Witness Testimony). However, no particular articulation is given as to their persuasiveness as these are not opinions within the current regulations; rather, they are considered evidence from nonmedical sources (20 CFR 416.913 and 416.920c).

The State agency consultants did not make findings regarding the child standards of disability and their findings will be discussed below in the discussion of the adult standards (Exhibits 2A, 6A). **Similarly, the consultative examination was performed after the claimant attained the age of 18 and the opinion discussed the adult standards and will be discussed further below (Exhibit 9F).**

Accordingly, the claimant does not have an impairment or combination of impairments that functionally equals a listing, because the claimant does not have either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning.

*Id.* at 27–28. Indeed, ALJ Pickett goes on to extensively analyze Dr. Scott's medical opinion during his determination as to Claimant's *adult* disability. *Id.* at 34–35; *see infra*, Section III(B).

"It is well settled that," when an ALJ makes a decision, he or she may "'consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507–08 (6th Cir. 2006) (per curiam) (quoting *Loral Defense Systems-Akron v. NLRB*, 200 F.3d 436, 453 (6th Cir. 1999)); *see also Bayes v. Comm'r of Soc. Sec.*, 757 F. App'x 436, 445 (6th Cir. 2018) ("[A]ssuming . . . that the ALJ did fail to consider the two Physician's Reports, the adaptation limitations noted in those reports are not sufficiently different from those in the May report to believe that they would have caused the ALJ to reach a different conclusion. Any error was therefore harmless."); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) ("The court may review [a medical expert's] report, in its consideration of the record as a whole, to determine if the ALJ's decision was based upon substantial evidence, even if the ALJ failed to cite the report in [a particular section of his decision]."); *cf. Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 529, 529 n.5 (6th Cir. 2014)

(distinguishing *Heston* and finding error where "[t]he ALJ failed to even mention [the claimant's treating psychiatrist] by name and only considered some isolated excerpts from his notes"). An ALJ need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts." *Kornecky*, 167 F. App'x at 508 (citation and quotation omitted). In other words, the ALJ must merely "provide an accurate and logical bridge between the evidence and the conclusion." *Logsdon v. Kijakazi*, No. 1:20-CV-00177-GNS, 2022 WL 812416, at *5 (W.D. Ky. Mar. 16, 2022) (quotation omitted).

The Sixth Circuit typically views decisions by ALJs "as a whole," and has determined that an ALJ need not repeat the same findings that are contained elsewhere in their decision. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014); *see also Lillian A. v. O'Malley*, No. 4:23-CV-4-CRS-HBB, 2024 WL 987571, at *2 (W.D. Ky. Mar. 7, 2024) ("[A]n ALJ's reasons for rejecting or adopting a medical opinion may be gleaned from elsewhere in the written decision[.]" (quoting *Booker R. v. Comm'r of Soc. Sec.*, No. 3:22-CV-170, 2023 WL 4247312, at *4–5 (S.D. Ohio June 29, 2023))); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("[T]he ALJ did not reproduce a list of these treatment records a second time when she explained why [a medical expert's] opinion was inconsistent with the record. But it suffices that she listed them elsewhere in her opinion." (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014))). And, in articulating their reasoning, an ALJ has discretion to discount the opinions of medical experts who apply a different standard than that used by the ALJ. *See Ray A. v. Saul*, No. GLS 20-01103, 2021 WL 4225749, at *6 (D. Md. Sep. 15, 2021) ("[B]ecause [a medical expert's] evaluation of Plaintiff was conducted under a child standard, rather than the required adult standard for claimants who turn 18, the ALJ did not err by not relying upon [the expert's] opinion.").

Here, although ALJ Pickett did not expressly consider the *contents* of Dr. Scott's opinion in his analysis of Claimant's marked limitations prior to age eighteen, ALJ Pickett did not ignore Dr. Scott's opinion during his analysis of the childhood domains. Rather, ALJ Pickett expressly referenced Dr. Scott's opinion and noted that he would consider Dr. Scott's opinion as part of Claimant's adult disability determination because Dr. Scott's evaluation "was performed after the claimant attained the age of 18 and . . . discussed the adult [disability] standards." [R. 6, pp. 27–28 (Tr.)]. ALJ Pickett's handling of a medical expert who applies a different standard is a matter within his discretion. *See Ray A.*, 2021 WL 4225749, at *6. Moreover, because ALJ Pickett extensively analyzed Dr. Scott's opinion later in his decision during his discussion of Claimant's disability under the adult standard, *see* [R. 6, pp. 34–35 (Tr.)], ALJ Pickett was not obligated to reiterate those factual findings in his discussion of Claimant's disability under the child standard. *See Lillian A.*, 2024 WL 987571, at *2; *Crum*, 660 F. App'x at 457; *Forrest*, 591 F. App'x at 366. When ALJ Pickett's decision is viewed "as a whole," it is clear he adequately addressed Dr. Scott's opinion. *See Hill*, 560 F. App'x at 551; [R. 6, pp. 34–35 (Tr.)]. As discussed, an ALJ need not "make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts," *Kornecky*, 167 F. App'x at 508 (citation and quotation omitted), and as long as the ALJ "provide[s] an accurate and logical bridge between the evidence and the conclusion." *Logsdon*, 2022 WL 812416, at *5. The ALJ comprehensively explained why he did not find a marked limitation in the area of interacting and relating with others, and he built a clear and logical bridge for how he considered Dr. Scott's opinion in that assessment. Accordingly, Claimant's first argument fails.

Claimant's second argument regarding ALJ Pickett's childhood disability determination contends that because Dr. Scott found Claimant suffered a "marked" limitation in his "capacity to

respond appropriately to supervisors, co-workers, and general public in a work setting," [R. 6, p. 1211 (Tr.)], ALJ Pickett's determination that Claimant was *not* markedly limited in his ability to interact and relate with others was not supported by substantial evidence. [R. 21, p. 2]. Although ALJ Pickett did not discuss the contents of Dr. Scott's opinion during his assessment of Claimant's childhood disability, the Court has already established that he was not required to do so. *See supra*. Moreover and regardless, ALJ Pickett extensively analyzed other evidence in the record regarding Claimant's ability to interact and relate with others and his finding was supported by substantial evidence. *See* [R. 6, pp. 25–26 (Tr.)].[2] This evidence—which *was* expressly considered by ALJ Pickett as part of his evaluation of Claimant's childhood disability—and Dr. Scott's evaluation—which was evaluated during ALJ Pickett's adult-disability determination—both provide conflicting information as to Claimant's ability to interact and relate with others; some portions suggest Claimant's limitations in this childhood domain were relatively minor, while others suggest they were more significant. *See id.*; *cf., e.g., id.* at 929 (Claimant testified to significant anxiety even around those he feels comfortable with, but only "once a month or so"), 1206 (Dr. Scott described Claimant's "normal" eye contact, "pleasant" demeanor, and frequent smiling while also finding Claimant markedly impaired in his "capacity to respond appropriately"). Given that

---

[2] Specifically, ALJ Pickett considered at [R. 6, pp. 25–26 (Tr.)] the following: (1) evidence from Claimant himself, [R. 6, pp. 51–52 (Tr.)] (Claimant testified at hearing to becoming "really anxious even around people [he] feel[s] comfortable around" around "once a month or so"), 929 (reporting "concerns with personal adjustments and difficulties with interpersonal relationships and self-esteem"); (2) evidence from Claimant's mother, *id.* at 290 (reporting no issues with "getting along with family, friends, neighbors, or others"), 337 (describing Claimant's "anxiety, especially in social situations, that can be crippling"), 767 (denying Claimant had behavioral problems at school, reporting he "plays well with his same age peers," and stating he "is very shy" with "social anxiety" and "social trepidation"), 929 (reporting "significant concerns with [Claimant's] anxiety . . . and social problems"); and (3) evidence from various educational providers, *id.* at 239 (math teacher reported Claimant experienced "difficulty with articulation and with some expressive [and] receptive communication skills"), 247 (English teacher reported "no problems observed" in interacting and relating with others), 348 (teacher reported "serious" problems compared to his peers with "making and keeping friends" and "introducing and maintaining relevant and appropriate topics of conversation"), 416 (2020 Individualized Education Program reflected social and emotional performance "commensurate with similar age peers"), 929 (school dean reported mild anxiety concerns).

ALJ Pickett "implicitly resolved . . . conflicts" in the evidence, *Kornecky*, 167 F. App'x at 508, and "provide[d] an accurate and logical bridge between the evidence and the conclusion," *Logsdon*, 2022 WL 812416, at *5, the fact that he did not expressly consider Dr. Scott's conclusions does not mean his decision was not supported by substantial evidence. *See Cutlip*, 25 F.3d at 286 (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Indeed, ALJ Pickett's decision *was* supported by substantial evidence, as a reasonable mind might determine that a child who reported experiencing anxiety "once a month or so," [R. 6, pp. 51–52 (Tr.)], whose mother reported no issues with the child "getting along with family, friends, neighbors, or others," *id.* at 290, and whose English teacher reported "no problems observed" in the child's ability to interact and relate with others, *id.* at 247, did not experience a limitation in their ability to interact and relate with others so severe as to "interfere[e] seriously with [his] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). Claimant's second argument therefore fails.

Taken together, ALJ Pickett's decision "provide[s] an accurate and logical bridge between the evidence and the conclusion," *Logsdon*, 2022 WL 812416, at *5, as ALJ Pickett explains that he considers Dr. Scott's opinion as part of Claimant's adult-disability determination and considers evidence representative of Dr. Scott's opinion during the child-disability determination. And, ALJ Pickett's child-disability decision is supported by "substantial evidence"—by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Cutlip*, 25 F.3d at 286, as he extensively considers a range of evidence available to him in reaching an outcome different than that reached by Dr. Scott regarding Claimant's degree of limitation in his ability to interact and relate with others. The Court rejects Claimant's challenges on these grounds.

- 14 -

2.  <u>Cherry-Picking: Opinions of Ms. Dye and Dr. Stilp</u>

Claimant's next objection asserts that ALJ Pickett's references to Ms. Dye's questionnaire and Dr. Stilp's neuropsychological evaluation "paint the evidence in a light that is not reflective of their true import." [R. 21, p. 3]. In other words, Claimant argues ALJ Pickett cherry-picked the evidence from the reports of Ms. Dye and Dr. Stilp to support a finding that Claimant was not disabled. Accordingly, Plaintiff contends, the ALJ's decision was erroneous because he did not adequately explain why he did not find at least a marked limitation in Claimant's ability to interact and relate with others. *Id.*

Ms. Dye, in discussing Claimant's ability to interact and relate with others, reported "serious" problems compared to his peers with components of Claimant's behavior, including "making and keeping friends" and "introducing and maintaining relevant and appropriate topics of conversation." *Id.* at 348. However, she did not report that it was necessary to implement strategies to modify his behavior. *Id.* Ms. Dye further described Claimant as willing to "speak with others," but engaging in conversations "often below his peers regarding topics [and] depth." *Id.* at 349. Finally, Ms. Dye reporting understanding "1/3 to 2/3" of Claimant's speech on the first attempt when the topic of conversation is either known or unknown, but reported understanding "almost all" of Claimant's speech "after repetition and/or rephrasing." *Id.*

Dr. Stilp, in discussing Claimant's ability to interact and relate with others, noted various reports from third parties in the "Summary & Impressions" section of his evaluation, including reports: from Claimant's mother as to Claimant's anxiety, particularly in new social situations, and "social problems," *id.* at 928–29; from Claimant himself as to his "concerns with personal adjustment, such as difficulties with interpersonal relationships and self-esteem," *id.* at 929; and from the dean at Claimant's school regarding "mild concerns with [Claimant's] anxiety." *Id.* at

929. In the "Supporting Documentation" section of his evaluation, Dr. Stilp wrote regarding Claimant's psychosocial history that Claimant "has friends in school" and "occasionally invites them over to [his] house," enjoys "playing video games, playing on his phone, and participating in cosplay," and has a "generally happy mood" but "is anxious in new situations and with new people," though his anxiety has improved in recent years and he has received counseling for it. *Id.* at 935. And, in the "Behavioral Observations & Interview" portion of his evaluation, Dr. Stilp described Claimant as "pleasant," "friendly," "cooperative[]," "motivated," and "euthymic," wrote that he "brightened when interacting with the examiner" and "readily established and maintained rapport," and reported Claimant's statements that he "has some friends in school" and "sees one outside of school" and that the "is often anxious at school due to tests and sometimes worrying about his academic performance" but feels "less anxious at home." *Id.* at 936. Lastly, in the "Behavior Ratings" section of his evaluation, Dr. Stilp reflected reports from Claimant's mother regarding Claimant's anxiety and social issues, from Claimant's teacher regarding Claimant's anxiety, and from Claimant regarding "mild concerns with interpersonal relationships." *Id.* at 938. Despite the foregoing, Dr. Stilp did not list a diagnostic impression of any anxiety disorder. *Id.* at 929.

ALJ Pickett, in discussing the evidence presented by Mrs. Dye and Dr. Stilp, wrote the following:

> . . . During his neuropsychological evaluation in 2022, the claimant's mother reported significant concerns with anxiety and social problems while the claimant reported concerns with personal adjustments and difficulties with interpersonal relationships and self-esteem (Exhibit 4F at 2). The dean of the school noted only mild concerns with anxiety (Exhibit 4F at 2). The claimant made appropriate eye contact and participated in reciprocal social interactions with the examiner (Exhibit 4F at 9). Rapport was readily established and maintained (Exhibit 4F at 9).

> . . . In 2023, several months after turning 18, one of the claimant's teacher noted some serious problems making and keeping friends and maintaining conversation but slight to obvious problems in other areas in this domain (Exhibit 12E at 4). . . .

*Id.* at 25.

"Generally, an ALJ has a duty not to cherry-pick facts from the record to support a finding of not disabled where a finding of disabled would otherwise be appropriate." *Coppage v. Berryhill*, No. 1:16-CV-00144-GNS, 2017 WL 8640926 at *4 (W.D. Ky. Aug. 10, 2017) (citing *Smith v. Comm'r of Soc. Sec.*, No. 1:11-CV-2313, 2013 WL 943874 at *6 (N.D. Ohio Mar. 11, 2013)), *adopted by* 2018 WL 305336 (W.D. Ky. Jan 5, 2018). "However, an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant." *Id.* Instead, "[w]hat some describe as 'cherry-picking' may more neutrally be termed weighing the evidence." *Id.* (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009)). Accordingly, the Sixth Circuit has recognized that arguments that an ALJ has engaged in cherry-picking are "seldom successful because crediting [them] would require a court to re-weigh record evidence," a task already performed by the ALJ. *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014)

Regardless, the Court finds ALJ Pickett did not engage in cherry-picking. Rather, ALJ Pickett discussed evidence from Ms. Dye's questionnaire and Dr. Stilp's evaluation that both supported *and* opposed his conclusion that Claimant was not markedly limited in his ability to interact and relate with others. *See* [R. 6, p. 25 (Tr.)]. In other words, ALJ Pickett appropriately balanced the evidence and determined that Claimant has some social anxiety but was not markedly limited in this area. *Id.* at 26. Because an ALJ's opinion must only be supported by "substantial evidence"—by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Cutlip*, 25 F.3d at 286—the Court finds that ALJ Pickett adequately articulated his

reasoning in resolving the conflicting evidence as to Claimant's ability to interact and relate with others before he turned eighteen. Accordingly, the Court concludes ALJ Pickett did not err on this ground.

### B.  Adult Disability Determination

Claimant's final objection contends that ALJ Pickett failed to adequately consider Dr. Scott's medical opinion in his determination that Claimant was not disabled after he turned eighteen. [R. 21, pp. 4–7]. More specifically, Claimant argues ALJ Pickett did not adequately address the supportability and consistency of Dr. Scott's opinion when finding Claimant had the residual functional capacity to "understand, remember, and carry out simple instructions and procedures; . . . respond appropriately to supervisors and coworkers in usual work situations; deal with changes in a routine work setting that do[] not require work with the public; and . . . interact[] with coworkers and supervisors." [R. 6, p. 30 (Tr.)]. According to Claimant, "the explanation given by the ALJ was limited to Plaintiff remaining pleasant and cooperative as tasks increased in difficulty when meeting with an unfamiliar provider, and Plaintiff spending time with friends and doing things like go bowling or to the movies." [R. 21, p. 4].

The Court has already outlined Dr. Scott's conclusions. *See supra* Section III(A)(1). To reiterate, during her evaluation, Dr. Scott found Claimant's "capacity to respond appropriately to supervisors, co-workers, and general public in a work setting" was affected to a "marked degree." [R. 6, p. 1211 (Tr.)]. When speaking with Dr. Scott, Claimant reported experiencing "anxiety in crowds and when talking to new people" and "feel[ing] uncomfortable speaking to anyone in authority." *Id.* at 1206. During Claimant's interaction with Dr. Scott, Claimant also displayed "normal" levels of eye contact, "remained pleasant even as tasks increased in difficulty," and "smiled often and appeared to become more at ease as the examination progressed." *Id.* at 1207.

As discussed below, *see infra*, the ALJ largely credited Dr. Scott's findings and addressed them all.

The new regulations for evaluating medical opinions are applicable here since Claimant's claim was filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The previous regulations required a treating physician's opinion be given controlling weight if it was well-supported by medically acceptable clinical and laboratory diagnostic techniques and was not inconsistent with the other substantial evidence in the case record. *Id.* § 404.1527(c)(2). Under the new regulations, however, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." *Id.* § 404.1520c(a). An administrative law judge must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors" when determining the persuasiveness of an opinion. *Id.* §§ 404.1520c(c)(1)–(5). But the administrative law judge need only explain how she considered the supportability and consistency factors, which are the two most important in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. *Id.* § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented, the more persuasive the medical opinion(s) will be. *Id.* § 404.1520c(c)(1). The more consistent the medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive it will be. *Id.* § 404.1520c(c)(2). "To further illuminate this distinction, supportability relates to the objective medical evidence and supporting explanation provided by a medical source to bolster their own opinion; by contrast, consistency relates to the relationship of a medical source's opinion to other medical opinions and evidence of record." *Marika G. v. O'Malley (Marika I)*, No. 3:24-CV-00105-CRS-RSE, 2024 WL 5465207, at *4 (W.D. Ky. Dec. 20,

2024), *report and recommendation adopted sub nom.*, *Marika G. v. King (Marika II)*, No. 3:24-CV-105-CRS, 2025 WL 384416 (W.D. Ky. Feb. 4, 2025) (citing 20 C.F.R. § 416.920c(c)(1)–(2)). "[T]he measuring stick for an 'adequate discussion' [of these factors] is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of his finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune v. Kijakazi*, No. 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citations omitted).

> In considering Dr. Scott's opinion, ALJ Pickett provided the following analysis:

> The psychological consultative examiner, P. Leanne Scott, M.S, LPP, opined the claimant's ability to understand, retain, and follow instructions towards the performance of simple, repetitive tasks appeared slightly or mildly affected; his ability to sustain concentration towards the completion of tasks under time constraints appeared moderately affected; ability to tolerate stress and the pressure of day to day employment appeared affected to a moderate degree; and his capacity to respond appropriately to supervisors, co-workers, and the general public in a work setting appeared affected to a marked degree (Exhibit 9F at 7). This opinion is only partially persuasive. The mild restriction in following instructions is supported by testing that showed the claimant's overall cognitive functioning was in the low average range (Exhibit 9F at 4, 5). The moderate limitation in terms of concentration and pace was supported by the claimant's performance on the Trails tasks (Exhibit 9F at 4). However, the marked limitation interacting with others was not supported by Dr. Scott's own exam where the claimant reported new people caused him stress, but he remained pleasant and cooperative even as tasks increased in difficulty and he was meeting with an unfamiliar provider (Exhibit 9F at 3). Marked limitations interacting with others are also not consistent with the claimant's reports he spends time with friends and will do things like go bowling or to the movies (Exhibit 9F at 3; Hearing Testimony).

[R. 6, pp. 34–35 (Tr.)].

The Court finds that ALJ Pickett sufficiently articulated the supportability and consistency of Dr. Scott's opinion and pointed to record evidence in supporting his findings. "'A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion.'" *Wroblesky v. Comm'r of Soc. Sec.*, No. 1:23-CV-232-JEG, 2023 WL 7131807, at *9 (N.D. Ohio Oct. 30, 2023) (quoting *Toennies v. Comm'r*

- 20 -

*of Soc. Sec.*, No. 1:19-CV-02261-JDG, 2020 WL 2841379, at \*14 (N.D. Ohio June 1, 2020)). This means that the ALJ must "articulate the supportability and consistency of each medical opinion," *Newman v. Kijakazi*, No. 5:22-59-KKC, 2023 WL 2700700, at \*2 (E.D. Ky. Mar. 29, 2023) (citations omitted), but he or she "is not required to specifically use the terms supportability or consistency in [the] analysis." *Id.* (internal quotation marks omitted) (quoting *Childers v. Kijakazi*, Civil No. 5:21-285-JMH, 2022 WL 2706150, at \*5 (E.D. Ky. July 12, 2022)); *see also Fisk v. O'Malley*, No. 5:23-CV-00261-MAS, 2024 WL 4194307, at \*4 (E.D. Ky. Sept. 13, 2024) ("The ALJ describes his consistency findings but does not necessarily use those words. Such specificity or magical incantation of words is not required.").

In this case, ALJ Pickett did not use the word "supportability"—he used the phrase "not supported" instead—but he adequately articulated why Dr. Scott's opinion was "not supported by" her own treatment notes and inconsistent with other evidence in the record. [R. 6, pp. 34–35 (Tr.)]. In the passage quoted above discussing Dr. Scott's opinion, *see supra*, ALJ Pickett found Dr. Scott's opinion "only partially persuasive," determining that some components of Dr. Scott's opinion were "supported"—those regarding Claimant's mild restriction in following instructions and moderate limitation in terms of concentration and pace—but also finding Dr. Scott's conclusion that Claimant was markedly limited in interacting with others was "not supported by Dr. Scott's own exam" or by Claimant's hearing testimony. *Id.* Specifically, ALJ Pickett determined Dr. Scott's marked-limitation finding was undermined by Dr. Scott's own treatment notes that Claimant "remained pleasant and cooperative even as tasks increased in difficulty and he was meeting with an unfamiliar provider" and inconsistent with the record of "[C]laimant's reports [that] he spends time with friends and will do things like go bowling or to the movies." *Id.* Two paragraphs later, ALJ Pickett also evaluates the medical opinions of Dr. Blythe Farish-Ferrer

- 21 -

and Dr. Alicia Fedewa, two psychological consultants who evaluated Claimant at the request of the Social Security Administration and who determined that Claimant was moderately limited in his ability to interact with others. *Id.* at 35 (citing [R. 6, pp. 69, 78, 88, 92, 97 (Tr.)]). Specifically, Dr. Farish-Ferrer and Dr. Fedewa each reported that Claimant "accompan[ies] [his mother] on shopping trips[,] . . . visits with his friends regularly, [and] goes bowling with his friends," and noted that Claimant displayed "normal" eye contact, appeared "responsive, cooperative, [and] agreeable," "persisted with all tasks," "remained pleasant" with an "appropriate" affect, and reported an "anxious" mood but "smiled often and appeared to become more at ease" throughout the examination. *Id.* at 69, 78, 88, 98–99. Dr. Farish-Ferrer also specifically reported that Claimant "goes to school, . . . shops, and spends time with others," *id.* at 69, 78, while Dr. Fedewa reported that Claimant "engages socially," "goes to school," "shops, [and] spends time with others." *Id.* at 88, 98. Considered together, ALJ Fulcher concluded this evidence "does not provide a basis for limitations greater than those determined in the residual functional capacity." *Id.* at 36.

Having considered his thorough analysis, the Court finds that substantial evidence supports ALJ Pickett's finding that Dr. Scott's assessment is "only partially persuasive." [R. 6, p. 34 (Tr.)]. ALJ Pickett complied with the regulations by discussing both the supportability and consistency of the assessment, and he thoroughly considered the objective medical evidence—including Dr. Scott's own treatment records and evidence from Dr. Farish-Ferrer and Dr. Fedewa (which included Claimant's own descriptions of his social activities)—that contradicts Dr. Scott's assessment of Claimant's functional limitations in the area of responding appropriately in a work setting. *Id.* at 34–35 (citing [R. 6, pp. 51 (Claimant testified to "hang[ing] out with friends" by going to the movies), 69 (Dr. Farish-Ferrer reported Claimant "accompan[ies] [his mother] on shopping trips[,] . . . visits with his friends regularly, [and] goes bowling with his friends," and

- 22 -

noted that Claimant displayed "normal" eye contact, appeared "responsive, cooperative, [and] agreeable," "persisted with all tasks," "remained pleasant" with an "appropriate" affect, and reported an "anxious" mood but "smiled often and appeared to become more at ease" throughout the examination), 78 (same), 88 (Dr. Fedewa reported the same), 98–99 (same), 1207 (Dr. Scott reported Claimant "visits with his friends regularly," "goes bowling with his friends," "go[es] out socially once a week," and "likes to have friends over to his house," and further described Claimant as "pleasant" and "cooperative" even as tasks conducted before an unfamiliar provider increased in difficulty)]). This evidence alone is sufficient to establish the supportability and consistency of Dr. Scott's medical opinion, as it addresses both "the objective medical evidence and supporting explanation provided by a medical source to bolster their own opinion" and "the relationship of a medical source's opinion to other medical opinions and evidence of record," *Marika G.*, 2024 WL 5465207, at *4, and does so to an extent that "enables the court to undertake a meaningful review of [the ALJ's] finding as to whether the particular medical opinion was supported by substantial evidence." *Terhune*, 2022 WL 2910002, at *3.

Moreover, as the Court has previously discussed, *see supra* Section III(A)(1), because an ALJ's decisions are typically evaluated "as a whole," *Hill*, 560 F. App'x at 551, the ALJ's "reasons for rejecting or adopting a medical opinion may be gleaned from elsewhere in the written decision[.]" *Lillian A.*, 2024 WL 987571, at *2 (quoting *Booker R.*, 2023 WL 4247312, at *4–5). Beyond the evidence above specifically addressed by ALJ Fulcher in the context of Dr. Scott's medical assessment of Claimant's residual functional capacity, the Court notes that ALJ Fulcher also cited other evidence relevant to the residual functional capacity determination throughout his opinion. *See* [R. 6, pp. 22 (citing [R. 6, p. 50 (reporting Claimant had contact with coworkers at previous employment)]), 28 (citing [R. 6, pp. 298 (Claimant reported he "eat[s] out, play[s] games,

[and] talk[s] on the phone" with others "almost every day" and attends "school every day, archery twice a week, and bowling once a week"), 316 (Claimant presented himself as "polite and respectful" with "average eye contact" during evaluation with unfamiliar provider)]), 32–33 (citing [R. 6, p. 1207 (Dr. Scott reported Claimant "visits with his friends regularly," "goes bowling with his friends," "go[es] out socially once a week," and "likes to have friends over to his house")])]. This evidence supplements the Court's conclusion that ALJ Fulcher adequately discussed the supportability and consistency of Dr. Scott's opinion in finding it "only partially persuasive." *Id.* at 34.

In Claimant's objections to Magistrate Judge Edwards's Recommendation, Claimant argues ALJ Pickett's reasoning was insufficient to support his finding that Dr. Scott's opinion was "only partially persuasive." *See* [R. 21, pp. 4–5]. Therein, Claimant cites to caselaw from outside this district in arguing that ALJ Pickett's reference "to [Claimant's] cooperation with [Dr.] Scott" and to Plaintiff's testimony that "he is able to go to the movies and go bowling with friends" do not justify ALJ Pickett's rejection of Dr. Scott's opinion. *See id.* (citing *Benson v. Comm'r of Soc. Sec.*, No. 2:24-CV-00908-LK, 2025 WL 3033949, at *9 (W.D. Wash. Oct. 30, 2025); *Hayman v. Massanari*, No. Civ.A. 00-515-SLR, 2001 WL 1180465, at *12 (D. Del. Oct. 1, 2001). Although Claimant's cited cases support the proposition that observations of residual functional capacity in a clinical environment may not necessarily translate to a non-clinical environment, ALJ Pickett's residual functional capacity determination did not rest solely on Claimant's interactions in a clinical setting. *See supra*. The same is true regarding Claimant's ability to go bowling and go to the movies with his friends; contrary to Claimant's assertions in his Objections, *see* [R. 21, pp. 4–5], ALJ Pickett relied on a range of evidence beyond Claimant's cooperativeness, bowling, or

- 24 -

movie-going—including other medical opinions from Dr. Farish-Ferrer and Dr. Fedewa—in finding Dr. Scott's assessment "only partially persuasive." *Id.* at 34; *see also supra*.

Taken together, therefore, ALJ Pickett provided a coherent and sufficient explanation in assessing the supportability and consistency of Dr. Scott's opinion and ultimately, discounting it in part. Accordingly, ALJ Pickett did not err in finding Claimant's residual functional capacity permits Claimant to "understand, remember, and carry out simple instructions and procedures; . . . respond appropriately to supervisors and coworkers in usual work situations; deal with changes in a routine work setting that do[] not require work with the public; and can have occasional interaction with coworkers and supervisors." [R. 6, p. 30 (Tr.)]. Because ALJ Pickett's residual functional capacity was supported by substantial evidence, Claimant's final objection fails.

## IV.    CONCLUSION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable law and regulations. **IT IS HEREBY ORDERED** as follows:

1.    Magistrate Judge Regina S. Edwards's Report and Recommendation, [**R. 20**], is **ADOPTED** as the opinion of this Court. Claimant's objections, [**R. 21**], are **OVERRULED**.

2.    The final decision of the Commissioner is **AFFIRMED**.

3.    A separate Judgment will be entered consistent with this Order.

This the 31st day of March, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY